UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENNETH RACKEMANN,                    )
                                      )
              Plaintiff,              )
                                      )
       v.                             )      No. 1:24-cv-01441-SEB-CSW
                                      )
ANGELA REYNOLDS,                      )
QUINTA NTEMGWA,                       )
SUSANNA CONLIN,                       )
TRENT ALLEN,                          )
LISA HAMBLEN,                         )
CENTURION HEALTH OF INDIANA, LLC,     )
HALEY COX,                            )
                                      )
              Defendants.             )

**Order Denying Motion for Summary Judgment as to Exhaustion Defense
and Providing Notice of Intent to Grant Summary Judgment
Independent of the Motion**

Plaintiff Kenneth Rackemann filed this 42 U.S.C. § 1983 lawsuit while he was incarcerated at Pendleton Correctional Facility ("Pendleton"), which is part of the Indiana Department of Correction ("IDOC"). The Court's screening order allowed two claims to proceed: (1) an Eighth Amendment claim against the individual defendants based on allegations that they failed to properly administer Mr. Rackemann's insulin from July to December 2024; and (2) an Eighth Amendment *Monell* claim against Centurion Health of Indiana, LLC ("Centurion") based on allegations related to its staffing and documentation practices. *See* dkt. 22. The "Centurion Defendants," Susanna Conlin, Haley Cox, Lisa Hamblen, Quinta Ntemgwa, Angela Reynolds, and Centurion, move for summary judgment arguing that Mr. Rackemann failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, the motion, dkt. [59], is **DENIED.** In

1

addition, the Court **notifies** Defendants of its intent to grant summary judgment for Plaintiff on the exhaustion issue. Fed. R. Civ. P. 56(f).

Mr. Rackemann also filed a "motion to correct error," stating that he intended to attach a declaration from another inmate with his response. Dkt. 67. The Defendants have not opposed this motion or the declaration. The Court **GRANTS** Mr. Rackemann's motion to correct error, dkt. [67], to the extent that the declaration in Docket No. 67-1 is on the docket and part of the record.

## I.
## Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id*.; *Pack v. Middlebury Comm. Schs*., 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id*.

"To succeed on a motion for summary judgment based on an affirmative defense, the defendant 'must lay out the elements of the [defense], cite the facts which [the defendant] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the [plaintiff] on the [defense].'" *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024) (quoting *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)). In the exhaustion context, the Seventh Circuit requires a defendant prison official to "demonstrate that the plaintiff prisoner failed to exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law." *Id.*

2

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II.
## Factual Background

### A. Grievance Process

The Centurion Defendants designated as evidence Correctional Coordinator Chloe Bookout's testimony about the IDOC and Pendleton's grievance process. *See* Dkt. 60-3 (Bookout Aff.). The IDOC has a standardized Offender Grievance Process ("the Grievance Process") that allows inmates to resolve concerns and complaints related to their conditions of confinement. *Id.* ¶ 6. The Grievance Process was in place at Pendleton during the time Mr. Rackemann alleges his rights were violated. *Id.* To fully exhaust their grievances, inmates have to complete each step of the Grievance Process using the proper grievance forms. *Id.*, ¶ 8.

During the relevant period, the Grievance Process consisted of four steps: (1) attempting to resolve the grievance informally; (2) submitting a formal grievance within 10 days of the unsuccessful attempt to informally resolve the grievance; (3) submitting a Level 1 appeal, or a written appeal to the facility Warden/designee within 5 days; and (4) submitting a Level 2 appeal, or a written appeal to the Department Offender Grievance Manager within 5 days. *Id.*, ¶ 7.

3

If Mr. Rackemann received a response that was unsatisfactory to him, he had five business days to appeal the response. *Id.*, ¶ 15. If he did not receive any response, the policy allowed him to move forward with an appeal as if the grievance had been denied after 20 business days. *Id.*

### B. Plaintiff's Attempts at Exhaustion

After conducting a search of Mr. Rackemann's grievance history, Ms. Bookout found that he submitted six grievances related to insulin administration at Pendleton. *Id.* ¶ 12. The Court only describes the first three grievances in detail because they are dispositive.

### Grievance Number 24-187388

Mr. Rackemann submitted grievance number 24-187388 on July 30, 2024. Dkt. 60-4 at 8. Mr. Rackemann complained that he had missed over 20 insulin doses due to the lack of medical staff and he requested: "give me my shots its not fair for me to suffer due to short of nurses." *Id.* (as written). The grievance was stamped as "received" on July 31, 2024. *Id.* The grievance specialist opened the case on August 22, 2024, and responded on November 26, 2024. *Id.* at 6. The response stated: "[y]our grievance regarding your insulin has been received and reviewed. Upon investigation per documentation there were several days that were not signed off for insulin. Your grievance is founded. HSA Hamblen is aware of the situation and continues educational measures to ensure that this does not happen again [in] the future. Based on this information, your grievance is deemed resolved at the facility level." *Id.*

The parties dispute how and when Mr. Rackemann appealed 24-187388. The Centurion Defendants' record shows that Mr. Rackemann submitted a Level 1 appeal on December 1, 2024, which was stamped as "received" on December 11. *Id.* at 11. The Grievance Supervisor at the time, Laura Bodkin, submitted a "Receipt of Facility Level 1 Appeal" on December 11 as well. *Id.* at 10. The Centurion Defendants also designated as evidence the "Warden or Designee Appeal

Response Notice," which shows that Warden Trent Allen responded to Mr. Rackemann's appeal on November 26, stating "[s]taff addressed this concern. If you have this issue in the future, please notify staff immediately." *Id.* at 9. The Centurion Defendants do not have a record of Mr. Rackemann's response to the Level 1 appeal.

In contrast, Mr. Rackemann designated evidence showing the same Level 1 appeal for 24-187388 where he marked "Disagree with facility appeal response. Send appeal to Department Offender Grievance Manager," and signed on December 1, 2024. Dkt. 69-1 at 4.

Mr. Rackemann's sworn declaration and exhibits provide some context.[1] He claims that on July 18, 2024, he gave his case manager Mr. Goodnight three grievances related to his insulin. Dkt. 68 at 3 ¶ 6. He did not receive a copy or receipt for any of the grievances. On August 17, 2024, Mr. Rackemann filed a Level 1 appeal for one of the previous grievances and received a copy and signature from his case manager. *Id.*; *see also* dkt. 69-1 at 33. Then, on August 23, 2024, Mr. Rackemann filed a Level 2 appeal and sent it to Ms. Bodkin. Dkt. 68 at 3 ¶ 6; dkt. 69-1 at 33. He did not receive a response or a copy. *Id.* While Mr. Rackemann was appealing the grievance that he submitted on July 18, he also wrote a letter to Warden Allen on July 21 and submitted new grievances on July 26 and July 30, the latter of which was stamped as "received" and marked as 24-187388. *Id.* at 3–4 ¶¶ 6–9; *see also* dkt. 69-1 at 1, 14 (July 30 and July 26 grievances). According to Mr. Rackemann, he filed a Level 1 appeal of 24-187388 on August 26, 2024, after not receiving a response. Dkt. 68 at 4 ¶ 9. Then, Mr. Rackemann received Warden Allen's response to 24-187388 on November 26, 2024. *Id.* at 4 ¶ 10. He marked "Disagree with facility appeal

---

[1] Mr. Rackemann filed three declarations accompanied by exhibits in response to the Centurion Defendants' motion for summary judgment. Dkts. 65, 68, 69. The Court considered the filings as part of the record due to Mr. Rackemann's pro se status as well as the fact that they were filed by the deadline to respond. Furthermore, the Centurion Defendants have not opposed the filings and were able to file a reply after Mr. Rackemann filed his responses.

response. Send appeal to Department Offender Grievance Manager" on December 1, 2024, and handed the appeal to case manager Zuma. *Id.* at 5 ¶ 12. When Mr. Rackemann saw that the appeal was not signed, he signed the copy and gave the appeal to case manager Zuma again. *Id.* Case manager Zuma gave Mr. Rackemann a copy. *Id.* Ms. Bodkin sent a receipt that showed the level 2 appeal as a level 1 appeal. *Id.* Mr. Rackemann claims that he wrote Ms. Bodkin the same day to inform her that he filed a Level 2 appeal, not a Level 1 appeal, but did not receive a response. *Id.*

**Grievance Numbers 24-188004 and 24-188005**

Mr. Rackemann submitted grievance number 24-188004 on August 1, 2024, complaining about missing his insulin shots. In the "relief requested" section, he stated, "I just need your HCA to understand what can happen after and before a diabetic eats what insulin means to my health and the risk of AIC climbing I am chronic care I need this care to live." Dkt. 60-4 at 18. Mr. Rackemann submitted 24-188005 the next day, complaining about the same issue. *Id.* at 20. He stated, "I am asking and have been asking this has been a major going issue in the prison shortage of staff does not mean I miss shots or take double shots . . . I have complained to HCA and DON legal actions need to be taken." *Id.* Both grievances were stamped as "received" on August 6 and opened on August 29. *Id.* at 18, 20; *see also* dkt. 69-1 at 15. The grievance specialist responded to 24-188005 that "I cannot offer an explanation to the details regarding the remainder of grievance as grievance was written 5 months ago. You are encouraged to submit a Healthcare request to site leadership for any current concerns so they can be addressed." *Id.* at 22. The grievance is marked "resolved." *Id.*  The Centurion Defendants do not have any evidence that Mr. Rackemann appealed either grievance.

Mr. Rackemann designated evidence showing that he checked the "disagree" box to the grievance specialist responses for both 24-188004 and 24-188005, but he does not have a record of the Level 2 grievance appeal. *See* dkt. 69-1 at 9–10.

**Additional Grievances**

The Centurion Defendants designate three additional grievances as evidence: grievance numbers 24-193345, 24-196505,[2] and 25-203596. In addition to the above-described July 18 grievance and appeals, Mr. Rackemann designates many more grievances and appeals. *See, generally*, dkt. 69-1. Aside from the 24-187388 and 24-188005 none of Mr. Rackemann's grievances or appeals are stamped as "received" by a grievance specialist and opened.

## III. Discussion

The PLRA requires prisoners to exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

---

[2] This grievance concerns staff issues and does not complain about Mr. Rackemann's medical care. According to Mr. Rackemann's grievance history, he filed 24-193052 on October 14, 2024, which was designated as a "medical treatment" grievance. This grievance is marked as "resolved." Dkt. 60-4 at 3. It has not been produced for the Court's viewing.

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* The availability requirement "has teeth." *Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023). "The PLRA exhaustion requirement does not demand the impossible . . . [r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Id.* (internal quotations and citations omitted). *Ross v. Blake* identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643−44. "Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Centurion Defendants argue that Mr. Rackemann failed to exhaust his administrative remedies by not completing each step. Dkt. 60. Specifically, Mr. Rackemann did not appeal the Warden's response to grievance number 24-187388 and he did not appeal the grievance specialists' responses to any of the other grievances. There are two disputes of material fact that prevent the Court from granting summary judgment for the Centurion Defendants. *See Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) ("As we have said many times,

8

summary judgment cannot be used to resolve swearing contests between litigants.") (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

First, there is a dispute of fact over whether Mr. Rackemann completed the Level 2 appeal for grievance number 24-187388 or for the July 18 grievance. For No. 24-187388, Mr. Rackemann produced a copy of the appeal to the Warden's response, which shows that he checked the box to send the appeal to the final IDOC level. *See* dkt. 69-1 at 4. The Centurion Defendants argue that checking "disagree" on the grievance specialist response forms does not qualify as an appeal. Dkt. 70 at 2; dkt. 70-1 ¶ 7. But they do not contend that checking the disagree box on the Level 1 appeal is improper. Indeed, they have not produced a policy or description showing exactly what an inmate must do to appeal the Level 1 appeal. The form itself allows the inference that checking the box qualifies as appealing to the IDOC because it plainly states: "Disagree with facility appeal response. Send appeal to Department Offender Grievance Manager." The same is true for the July 18 grievance and appeals. Though the documents in the record do not bear the stamp of "received" and the IDOC does not have the July 18 grievance in its database, Mr. Rackemann contends that he did not receive responses to this grievance or the appeals. Thus, it can be inferred that Mr. Rackemann followed the policy of appealing the grievance and then appealing the appeal as though both had been denied.

Importantly, the Centurion Defendants have not addressed or contested the authenticity of Mr. Rackemann's exhibits or his testimony about giving the grievances and appeals to his case managers. *See* dkt. 68. The simultaneous timing of the grievance specialist and Warden's response to grievance number 24-187388 on November 26, 2024, lends support to Mr. Rackemann's testimony that he filed a Level 1 appeal of 24-187388 before ever receiving the grievance specialist's response because of the backlog and delay in response times and that his December 1

appeal was a Level 2 appeal. Furthermore, the Centurion Defendants designate Ms. Bookout's testimony that inmates should appeal un-responded-to grievances as if they had been denied, but do not address or dispute the fact that Mr. Rackemann testified and produced exhibits showing that he did exactly that for the July 18 grievance and grievance number 24-187388. In sum, the record supports an inference that Mr. Rackemann did complete all steps of the Grievance Process even though the IDOC's database does not show that all of his grievances and appeals were received and processed.

Second, there is a dispute of fact as to whether the grievance process was available to Mr. Rackemann. Mr. Rackemann testified about and produced records of grievances and appeals that he submitted to his case managers, but were not received or responded to by the grievance specialists. Mr. Rackemann also testified that Warden Allen issued a memorandum telling Pendleton inmates to appeal grievances even if they had not been responded to because of an extensive backlog. The Centurion Defendants have not disputed this testimony.

In a surreply, the Centurion Defendants argue that the grievance backlog is not material to whether Mr. Rackemann strictly complied with the Grievance Process. Dkt. 89 at 1–2. But the existence of a backlog does bear on whether the administrative remedies were available, or 'capable of use for the accomplishment of [their] purpose." *Ross*, 578 U.S. at 644. If an inmate is not receiving copies, receipts, and responses to their grievances because of an issue with workflow, then the grievance process begins to look a lot like a "dead end." *See id.* Though there is no evidence that prison officials threw away Mr. Rackemann's grievances or purposefully thwarted his efforts, the Seventh Circuit has explained that the grievance procedure can operate as a "dead end" even "in the absence of affirmative misconduct by prison officials." *Smallwood*, 59 F.4th at 314 (citing *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018)). Indeed, the Seventh Circuit has

plainly stated, that "[w]hen prison officials fail to timely respond to a prisoner's grievances, for example, administrative remedies are unavailable." *Jones*, 124 F.4th at 468 (citing *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005)) (reversing summary judgment for prison officials when they failed to respond to the prisoner's grievances within the time proscribed in the grievance policy or notify him of a delay). The Defendants have the burden of proving that the Grievance Process was available to Mr. Rackemann as a matter of law. They have not done so. Accordingly, Defendants are not entitled to summary judgment on the exhaustion defense

### IV. Rule 56(f) Notice and Further Proceedings

For the reasons stated above, the Centurion Defendants' motion for summary judgment, dkt. [59], is **DENIED**. Mr. Rackemann's motion to correct error, dkt. [67], is **GRANTED.**

Further, under Rule 56(f)(1), the Court gives the Centurion Defendants notice of its intent to grant summary judgment in Plaintiff's favor on the issue of exhaustion. The Centurion Defendants have **through April 20, 2026,** to show cause why summary judgment should not be granted.[3] Alternatively, the Centurion Defendants may withdraw their affirmative defense by this date.

**IT IS SO ORDERED.**

Date:  _____3/25/2026_____          _Sarah Evans Barker_
                                    SARAH EVANS BARKER, JUDGE
                                    United States District Court
                                    Southern District of Indiana

---

[3] The Centurion Defendants are reminded that they were warned in the Entry Directing Development of Exhaustion Defense and Issuing Partial Stay, dkt. 49, that "if Plaintiff responds with evidence that the administrative remedy process was unavailable, the movant may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the reply must directly confront the plaintiff's evidence regarding availability and explain why summary judgment is warranted despite that evidence." Thus, if Defendants intend to provide evidence to contradict Plaintiff's affidavit, they must show cause why such evidence should not be considered untimely in light of that Entry.

Distribution:

KENNETH RACKEMANN
132668
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

David Douglas Becsey
ZEIGLER COHEN & KOCH
dbecsey@zcklaw.com

James Bolen
Lewis and Wilkins
bolen@lewisandwilkins.com

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com